IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WALTER WARD and VIRGINIA WARD,<br><br>Defendants. | Case No. 3-21-cv-00056-JWS<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**<br>**[Dockets 14, 17]** |

## I. MOTIONS PRESENTED

At docket 14 Defendants Walter and Virginia Ward ("Defendants") filed a motion for summary judgment in this action brought by Plaintiff United States of America (the "Government") to reduce Defendants' tax assessments issued by the Internal Revenue Service ("IRS") to a civil judgment. They argue that the suit is barred by the statute of limitations and, alternatively, that the interest assessed should be abated due to IRS delays. The Government filed an opposition and cross motion for summary judgment at docket 17, asserting that the statute of limitations tolled long enough to make its suit timely and that the court does not have jurisdiction to abate interest. Defendants filed their joint response/reply at docket 18. The Government

filed its reply brief at docket 19. Oral argument was requested but would not be of assistance to the court.

## II. BACKGROUND

In 2000, the IRS concluded that Defendants had underreported their income by $197,521 for 1996 and by $209,127 for 1997 and notified them of these deficiencies. Defendants challenged the IRS's findings in the U.S. Tax Court. The Tax Court sustained the tax liabilities calculated by the IRS, which included a statutory penalty of $81,329 for substantial underreporting.[1] Additionally, the Tax Court imposed a $25,000 penalty against Defendants after finding that they had "maintained these proceedings primarily for delay" and that they demonstrated "an unwillingness to respect the tax laws of the United States."[2]

The IRS then recorded assessments for Defendants' tax liabilities. Assessments authorize the IRS to collect payment through a levy or court proceeding and trigger a ten-year statute of limitations on any collection action subject to certain tolling events.[3] Defendants' 1996 tax deficiency and penalty, plus the Tax Court's additional penalty, were assessed on November 25, 2002. Their 1997 deficiency and penalty were assessed on December 9, 2002. While the statute of limitations would have run out in late 2012, the Government asserts that Defendant-initiated events tolled the IRS's

---

[1] *Ward v. Comm'r*, 83 T.C.M. (CCH) 1820, 2002 WL 1285562, at *1 (June 11, 2002).
[2] *Id.* at *6.
[3] 26 U.S.C. § 6502.

*United States v. Ward* Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment Page 2
Case 3:21-cv-00056-JWS Document 20 Filed 07/06/22 Page 2 of 15

collection deadline out to July 2021, a few months after the Government filed suit. The tolling events are as follows:

(1) Offer-in-Compromise dated 12/27/2002;

(2) Due Process Hearing request dated 7/15/2003;

(3) Offer-in-Compromise dated 3/5/2004;

(4) Offer-in-Compromise dated 12/4/2008;

(5) Due Process Hearing request dated 12/16/2011;

(6) Offer-in-Compromise dated 3/6/2014; and

(7) Offer-in-Compromise dated 9/23/2015.[4]

A taxpayer files an offer-in-compromise through IRS Form 656, wherein he sets forth an offer to settle a tax debt for less than the assessed amount.[5] An IRS official then decides whether the form is administratively processable and, if so, signs the form.[6] At that time, the statute of limitations tolls while the IRS considers the offer on its merits.[7] The statute of limitations begins to run again 30 days after the IRS makes a final decision about the offer.[8]

Defendants' first offer-in-compromise argued that the assessments were erroneous. The offer was rejected, and the IRS notified Defendants that it was going to record a lien against their property. In response, Defendants requested a Due Process

---

[4] Docket 17 at 15; Docket 17-19 at 5–10; Docket 17-20 at 4–8.
[5] 26 C.F.R. § 301.7122-1(a); Docket 17-1 at ¶ 4.
[6] 26 C.F.R. § 301.7122-1(d)(2); Docket 17-1 at ¶ 4.
[7] 26 U.S.C. § 6331(i)(5), (k); 26 C.F.R. §301.7122-1(d), (g), (i).
[8] 26 U.S.C. § 6331(i)(5), (k); 26 C.F.R. §301.7122-1(g).

*United States v. Ward*  Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment  Page 3
Case 3:21-cv-00056-JWS   Document 20   Filed 07/06/22   Page 3 of 15

Hearing with the IRS Office of Appeals as provided for under 26 U.S.C. § 6330. The reviewing appeals officer explained to Defendants' representative that they could not use the § 6330 hearing process to contest a liability already affirmed by the Tax Court. After months of discussions with Defendants' representative, the appeals officer sustained the liens and closed the appeal. However, by that time, Defendants had filed a second offer-in-compromise. For this offer, Defendants requested a reduced payment for reasons based on "effective tax administration," which means when the debtor does not contest liability but argues that collection would cause economic hardship or would be unjust.[9] Defendants submitted "a large file of documentation" with their offer, but it ultimately was rejected for lack of any special circumstances that would justify a finding of hardship or unfairness.[10] Defendants filed an appeal. The reviewing appeals officer sustained the examiner's decision, and the offer was formally rejected in April 2005.

Defendants filed another offer-in-compromise in late 2008, again based on hardship and fairness. As with the previous offer, an IRS examiner rejected it, Defendants appealed, and the reviewing appeals officer affirmed the rejection. Afterwards, in 2011, the IRS sought to levy against Defendants' property but again Defendants requested a Due Process Hearing to challenge the levy. The appeals officer saw that the assessments originated from a Tax Court judgment and sustained the levy. Defendants appealed the decision to the Tax Court.

---

[9] 26 C.F.R. § 301.7122-1(b)(3).
[10] Docket 17-3 at 7.

*United States v. Ward*                                               Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment        Page 4
Case 3:21-cv-00056-JWS    Document 20    Filed 07/06/22    Page 4 of 15

At this time, the IRS assigned the case to a lawyer who failed to realize what the reviewing appeals officer did—that the assessments originated from a Tax Court judgment in 2002—and therefore agreed to allow Defendants to submit another proposed offer-in-compromise in exchange for dismissal of the case. Six months later, Defendants filed their fourth offer, asserting that they were not liable for the 1996 and 1997 tax deficiencies and offering to settle with the IRS for $1. They submitted four boxes of documents they claimed supported their position. The form was accepted for processing. It was rejected on the merits five days later. Defendants appealed, but the rejection was upheld and the offer was formally rejected in April 2015.

Defendants filed a fifth offer-in-compromise in September 2015, asking the IRS to settle the assessments for $2,808 based in part on their inability to pay. After a rejection of the offer and a failed appeal, the IRS formally rejected the offer in February 2017. After not receiving full payment, the IRS filed this lawsuit to reduce the long-standing assessments to a civil judgment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[12] Ultimately, "summary judgment will not lie if the . . . evidence

---

[11] Fed. R. Civ. P. 56(a).
[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*United States v. Ward*     Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment     Page 5
Case 3:21-cv-00056-JWS    Document 20    Filed 07/06/22    Page 5 of 15

is such that a reasonable jury could return a verdict for the nonmoving party."[13] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[15] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[16] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[17] All evidence presented by the nonmovant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the nonmovant.[18] However, the nonmoving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[19]

---

[13] *Id.*
[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[15] *Id.* at 323.
[16] *Id.* at 323–25.
[17] *Anderson,* 477 U.S. at 248–49.
[18] *Id.* at 255.
[19] *Id.* at 248–49.

*United States v. Ward* Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment Page 6
Case 3:21-cv-00056-JWS Document 20 Filed 07/06/22 Page 6 of 15

## IV.   DISCUSSION

A.   **Unpaid Assessments**

In a case to reduce unpaid tax assessments to a civil judgment, the Government has the burden to prove that the IRS made an assessment, that the assessment is "supported by a minimal evidentiary foundation," and that the defendants have not fully paid.[20]  Here, the dates and amounts of the 1996 and 1997 tax assessments are not in dispute:[21]

| Tax Year | Date of Assessment | Amount of Assessment (deficiency, penalty, and interest) |
|---|---|---|
| 1996 | 11/25/2002 | $372,835.83 |
| 1997 | 12/09/2002 | $356,615.96 |

These assessments are adequately supported.  The IRS imposed the assessments after receiving a final Tax Court judgment that affirmed Defendants' tax liabilities. Taxpayers are collaterally estopped from challenging an assessment that originates from a Tax Court judgment.[22]  It is undisputed that Defendants have not fully paid the assessments.  As of March 17, 2022, with the interest that has accumulated, the unpaid balance for the 1996 tax liability is $104,326.78 and the unpaid balance for the 1997 tax liability is $906,368.02.[23]  Defendants do not contest these calculations.

---

[20] *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983).
[21] Docket 17-19 at 3–4; Docket 17-20 at 3–4.
[22] *United States v. Carter*, 906 F.2d 1375, 1378 (9th Cir. 1990).
[23] Docket 17-1 at ¶¶ 23–24; Docket 17-16; Docket 17-17.

*United States v. Ward*                                                                                                       Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment                               Page 7
Case 3:21-cv-00056-JWS   Document 20   Filed 07/06/22   Page 7 of 15

Consequently, the IRS is entitled to summary judgment as to the amounts owed by Defendants if it can demonstrate that the ten-year deadline for filing a collection action against Defendants extended through March 8, 2021, the date it filed suit.

**B.    Tolling of the Collection Deadline**

The statute of limitations to reduce tax assessments to civil judgment is ten years after the date of assessment. The 1996 tax liability was assessed on November 25, 2002, and the 1997 tax liability was assessed on December 9, 2002, giving the IRS an original deadline of late 2012 to file a collection action. Given that the IRS filed its action against Defendants in 2021, it must prove that the collection deadline was appropriately tolled. Certain actions taken by a taxpayer can toll the collection deadline, including the filing of an offer-in-compromise through Form 656 or a request for a § 6330 Due Process Hearing.[24] The IRS claims that seven tolling events initiated by Defendants pushed its collection deadline out to July 2021 and therefore the March 2021 complaint is timely. The seven events are as follows:[25]

| Tolling Event | Start Date | End Date | Days Tolled |
|---|---|---|---|
| Offer in Compromise | 12/27/2002 | 1/23/2004 | 860 (Not double-counting days that overlap) |
| Due Process Hearing | 7/15/2003 | 3/12/2004 | |
| Offer in Compromise | 3/05/2004 | 4/05/2005 | |
| Offer in Compromise | 12/04/2008 | 10/15/2010 | 710 |
| Due Process Hearing | 12/16/2011 | 8/21/2013 | 614 |

---

[24] 26 U.S.C. § 6331(i)(5), (k); 26 U.S.C. § 6330(e); 26 C.F.R. § 301.7122-1(g), (i).
[25] Docket 17 at 15; Docket 19 at 2, n.1.

*United States v. Ward*  Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment    Page 8
Case 3:21-cv-00056-JWS   Document 20   Filed 07/06/22   Page 8 of 15

| Tolling Event | Start Date | End Date | Days Tolled |
|---|---|---|---|
| Offer in Compromise | 3/06/2014 | 4/02/2015 | 422 |
| Offer in Compromise | 9/23/2015 | 2/22/2017 | 548 |
| TOTAL | | | 3,154 |

Defendants argue that the statute of limitations should not toll for these events because the IRS allowed the process to linger unreasonably. There is no reasonableness exception to tolling under the statute. It is tolled while an offer-in-compromise or due process hearing remains pending. The tolling period remains pending until the matter is terminated, withdrawn, or formally rejected by the government.[26] Indeed, the IRS rejected each offer within the 24-month time limit created by Congress in 2005 and applicable to any offer-in-compromise submitted on and after July 16, 2006.[27] Moreover, as noted by the Government, Defendants caused much of the delay themselves through numerous filings and appeals. This is not a case where Defendants submitted offers and then waited years for answers. The record shows continuous correspondence with the IRS, and Defendants repeatedly appealed the IRS's initial determinations, regardless of merits. Defendants "made these offers and chose to see them through. There is no legal or equitable basis to hold that against the IRS."[28]

---

[26] *United States v. McGee*, 993 F.2d 184, 186–87 (9th Cir. 1993).
[27] 26 U.S.C. § 7122(f); Tax Increase and Prevention and Reconciliation Act of 2005, Pub. L. No. 109-222.
[28] Docket 17 at 20.

*United States v. Ward*     Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment     Page 9
Case 3:21-cv-00056-JWS    Document 20    Filed 07/06/22    Page 9 of 15

In their reply, Defendants clarify their argument. They argue that the IRS was unreasonable not because of delays in processing their offers, but because it processed their meritless offers. That is, Defendants concede that the 2002 Tax Court judgment precluded them from contesting the underlying tax liability, and now assert that their first and fourth offers-in-compromise, which improperly attempted to contest liability, were invalid on their face and thus could not have tolled the statute of limitations. That is, they argue that the IRS knowingly accepted at least two offers-in-compromise for processing that it had no basis to consider and that it did so to stall the IRS's collection deadline. This argument is nonsensical and baseless. "[W]ithout denying that they voluntarily made these offers, [Defendants] attempt to weaponize [their own] supposed impropriety to their benefit."[29] There is no factual basis to support Defendants' argument that the IRS tried to delay collection or would want to do so.

> No single IRS official reviewed all five of [Defendants'] offers. It was many employees, from examiners to appeal officers, across 15 years. [The] surviving work product shows a good-faith effort to resolve each offer appropriately. To allege the opposite, and claim without evidence that the IRS played out a 15-year scheme to toll the statute, is absurd.[30]

It was Defendants who primarily benefitted from these delays: "While the offers remained pending, the IRS could not collect payment on the underlying assessments. . . . [B]y filing so many offers, [Defendants] successfully blocked collection for years."[31]

---

[29] Docket 19 at 2.
[30] Id. at 4.
[31] Id.

*United States v. Ward* Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment Page 10
Case 3:21-cv-00056-JWS Document 20 Filed 07/06/22 Page 10 of 15

Moreover, there is no legal support for the argument that an offer-in-compromise contesting liability after a Tax Court judgment will not toll the statute. Indeed, any such rule "would have the perverse effect of allowing tax debtors to freeze collection against them by filing frivolous offers, without the return cost of tolling the statute."[32] The Seventh Circuit recognized as much in *United States v. McGaughey*,[33] acknowledging that even an offer preordained to fail is nonetheless a quid pro quo where the offeror agrees to suspend the collection deadline in exchange for the IRS to consider his offer.[34]

Defendants alternatively argue that their March 2014 offer-in-compromise should not toll the deadline because the 656 form was incomplete, lacking their signatures and an accompanying deposit. These arguments are without merit. Defendants' agent signed on their behalf, and the Government used its discretion to forego the required 20 percent deposit, which would have amounted to 20 cents given Defendants' $1 offer.[35]

Defendants reframe their argument in their responsive briefing. They assert that there is at least a factual dispute as to whether their first three offers-in-compromise were properly signed by all parties, and therefore a dispute about whether the tolling period was triggered. They rely on the fact that the IRS no longer has copies of the 656 forms submitted by them for their first three offers-in-compromise. Despite the

---

[32] *Id.*
[33] 977 F.2d 1067 (7th Cir. 1992).
[34] *Id.* at 1073.
[35] *See* Docket 17 at 20–21.

*United States v. Ward*   Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment   Page 11
Case 3:21-cv-00056-JWS   Document 20   Filed 07/06/22   Page 11 of 15

absence of the 656 forms—which are presumed destroyed pursuant to a 2014 IRS policy to purge files of a rejected offer-in- compromise six years after closure—the Government has evidence of the dates and pendency of Defendants' first three offers. It filed the Certificate of Assessments and Payments (IRS Form 4340) for the 1996 and 1997 tax assessments.[36] These 4340 forms, which are self-authenticating official IRS certificates, can constitute sufficient proof of assessments and related facts absent any evidence from the taxpayer that the certificate is incorrect or lacking credibility.[37]

As noted above, to make an offer-in-compromise a taxpayer or his agent sends the IRS a signed Form 656 and then the receiving IRS examiner signs the form to accept it for processing, thereby triggering the tolling period. The 4340 forms document the dates Defendants' offers-in-compromise became pending, which necessarily means, given the IRS procedure, that the forms were signed by the examiner. Defendants present no contrary evidence or evidence suggesting some irregularity here. Moreover, the IRS did locate and submit Defendants' final two offers-in-compromise forms. Those 656 forms were signed with dates matching those on the 4340 forms, further supporting the accuracy of the 4340 forms.[38]

Defendants argue that the 4340 forms are inadmissible as secondary evidence to prove the contents of their 656 forms because the IRS has not adequately demonstrated that the originals have been destroyed. This argument is unavailing. As

---

[36] Docket 17-1 at ¶ 5; Docket 17-19; Docket 17-20.
[37] *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).
[38] Docket 17-9 at 16; Docket 17-13 at 7.

*United States v. Ward*     Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment     Page 12
Case 3:21-cv-00056-JWS     Document 20     Filed 07/06/22     Page 12 of 15

noted by the Government, under the federal rules of evidence, inadvertent loss is enough to introduce secondary evidence in place of the original.[39]  Moreover, the evidence does in fact show that the 656 forms for Defendants' first three offers were destroyed in accordance with the IRS's six-year retention policy.[40]

Defendants' reliance on *McGaughey* to assert that something more specific about destruction is needed before secondary evidence can be admitted is unpersuasive.  In that case, as here, the taxpayer disputed that his offer-in-compromise tolled the statute of limitations.  He argued that because his 656 form was missing, the IRS could not demonstrate he agreed to waive the deadline.  He also submitted an affidavit claiming that an IRS agent induced him to make an offer-in-compromise and that he did not recall filling out a Form 656.[41]  Despite this contrary evidence, the court upheld summary judgment in favor of the IRS, relying on secondary evidence that sufficiently proved the taxpayer had submitted a Form 656 and thereby agreed to the tolling of the collection deadline.[42]  The affidavit relied upon in that case as to the IRS's destruction of the Form 656 does not appear to be distinguishable from the one submitted here.  Both assert that the IRS requires destruction of 656 forms and files after a specified period of time and that a search to procure a copy of the taxpayer's

---

[39] Fed. R. Evid. 1004; *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 825 (9th Cir. 2002).
[40] Docket 17-1 at ¶ 5.
[41] 977 F.2d at 1070.
[42] *Id.* at 1071–72.

*United States v. Ward*　　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment　　　Page 13
Case 3:21-cv-00056-JWS   Document 20   Filed 07/06/22   Page 13 of 15

form was fruitless.  Indeed, the Seventh Circuit stressed in *McGaughey* that proof of a thorough search for the original is not required.[43]

Relying on *McGaughey*, Defendants also argue that IRS failed to show that "sufficient procedural safeguards were in place to [e]nsure the IRS properly accepted the defendant taxpayer's missing offer in compromise."[44]  In *McGaughey*, the record included an affidavit from an IRS official detailing document retention safeguards and routine procedures for processing an offer-in-compromise and which the court relied upon in part to find that the taxpayer must have submitted a Form 656 waiving the statute of limitations.[45]  Such an affidavit is not, however, a requirement to prove that the IRS properly processed a Form 656; it simply was secondary evidence adding weight to the Government's argument that the taxpayer necessarily submitted the form.  Similarly here, there is secondary evidence to demonstrate the IRS processed and signed the 656 forms.  The declaration of an IRS official outlines the standard procedure related to a Form 656, which includes an examiner signing the form, triggering the pendency of the offer in the system.[46]  The 4340 forms in the record indicate the date that Defendants' offers became pending, which shows that the 656 forms were necessarily signed by the IRS examiner.[47]  Indeed, courts presume that IRS

---

[43] *Id.* at 1071.
[44] Docket 18 at 9.
[45] 977 F.2d at 1071–72.
[46] Docket 17-1 at ¶ 4.
[47] Docket 17-19; Docket 17-20.  See *Randle v. United States*, 2000 WL 1739314, at *11 (C.D. Cal. Aug. 4, 2000).

*United States v. Ward*  
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment  
Case No. 3:21-cv-00056-JWS  
Page 14  
Case 3:21-cv-00056-JWS   Document 20   Filed 07/06/22   Page 14 of 15

officials follow all procedural requirements in carrying out their duties.[48] This would necessarily include signing routine forms and checking for signatures. Defendants provide no rebuttal evidence.

**C.   Interest**

Defendants also seek summary judgment on the issue of interest, asking the court to abate the interest accrued on their tax liabilities as a matter of law because of IRS error. As noted and argued by the Government in its responsive briefing, the court lacks jurisdiction to abate interest on unpaid assessments. Any request for abatement must be submitted to the IRS and the IRS's denial is only reviewable by the Tax Court.[49]

## V.   CONCLUSION

Based on the preceding discussion, Defendants' motion for summary judgment at docket 14 is DENIED and the Government's motion for summary judgment at docket 17 is GRANTED.

IT IS SO ORDERED this 6th day of July, 2022, at Anchorage, Alaska.

/s/ John W. Sedwick
JOHN W. SEDWICK
Senior United States District Judge

---

[48] *Palmer v. IRS*, 116 F.3d 1309, 1311 (9th Cir. 1997).
[49] *See* 26 U.S.C. § 6404; *Hinck v. United States*, 550 U.S. 501, 503 (2007); *Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993).

*United States v. Ward*  Case No. 3:21-cv-00056-JWS
Order on Motion for Summary Judgment and Cross Motion for Summary Judgment  Page 15
Case 3:21-cv-00056-JWS   Document 20   Filed 07/06/22   Page 15 of 15